## JEFFERSON WHOLESALE GROCERY CO.
### v. KELLEY. (No. 1911.)

(Court of Civil Appeals of Texas. Texarkana. Feb. 7, 1918.)

VENDOR AND PURCHASER ⬤⟳85—CONTRACTS —RESCISSIONS—EVIDENCE—SUFFICIENCY.

In view of the conveyance to plaintiff by the successors of the vendor, which asserted a claim of the vendor's lien against the property, evidence *held* insufficient to show a mutual rescission by the vendor and purchaser of the contract to sell and purchase land on account of the purchaser's inability to pay for the land, under which the vendor reacquired title; the property having already been conveyed.

Appeal from District Court, Marion County; J. A. Ward, Judge.

Action by the Jefferson Wholesale Grocery Company against Mrs. B. A. Kelley. From a judgment for defendant, plaintiff appeals. Affirmed.

By her deed dated September 12, 1891, Mrs. E. J. Ford conveyed two-thirds of lot 1, block 8, Urquhart's addition to the city of Jefferson, to Mrs. Kate Kelley, wife of M. Kelley. The consideration, it appeared from recitals in the deed, was $950 paid to Mrs. Ford and the execution and delivery to her by Mrs. Kelley and her husband of their promissory note, dated said September 12, 1891, for $1,750, payable to Mrs. Ford's order 109 days after its date. Payment of the note was secured by a vendor's lien expressly retained in the deed to Mrs. Kelley.

Mrs. Kelley died intestate at a time not specified in the record, but prior to June 31, 1905, leaving no relative except her husband, who died testate said June 31, 1905. Appellee was the sole devisee in his will.

Mrs. E. J. Ford died testate in October, 1908. Her sons, J. L., J. V., and W. H. Ford, were the devisees of her property. J. V. Ford died intestate at a time not specified in the record, but prior to December, 1915, leaving as his only heirs his brothers, J. L. and W. H. Ford.

By virtue of an order of sale issued on a judgment rendered June 14, 1907, in favor of the city of Jefferson against Mrs. J. V. Ford for taxes due the city for the years 1902, 1903, 1904, and 1905, the sheriff of Marion county sold "⅔ block 8, Urquhart addition," and by his deed dated September 4, 1907, conveyed same to T. D. Rowell, the purchaser at such sale. Said Rowell by his quitclaim deed dated August 10, 1909, conveyed "⅔ lot 1, block 8, Urquhart addition," to J. L. and J. V. Ford.

By their deed dated December —, 1915, J. L. and W. H. Ford conveyed two-thirds of lot 1, block 8, Urquhart addition, to appellant. The deed contained recitals as follows:

"The said property herein conveyed being the same property heretofore conveyed by Mrs. E. J. Ford to Mrs. Kate Kelley. * * * The grantors herein being the sole survivors of said Mrs. E. J. Ford, and the said property never having been paid for by the said Mrs. Kate Kelley, and the vendor's lien note named in said deed from the said Mrs. E. J. Ford, deceased, having been transferred and delivered by us to the Jefferson Wholesale Grocery Company, the purpose of this deed is to convey all title held by us to said property, as well as to the said vendor's lien note as aforesaid."

This was a suit by appellant against appellee. It was to foreclose the lien retained by Mrs. Ford on the land to secure the payment of the $1,750 note and to sell the land to satisfy the amount of the note, which, it was alleged, was wholly unpaid, or, in the alternative, for the land. Appellant's claim of a right to recover the land if denied the foreclosure sought was on the theory: First, that the sale thereof to Mrs. Kelley was rescinded in 1899 or 1900 by force of an oral agreement between Mrs. Ford, acting by J. L. Ford, and M. Kelley; second, that if the sale was not then rescinded so as to revest the title to the land in Mrs. Ford, she had a right (which appellant had acquired and by the suit asserted) to rescind the contract and to have the title divested out of Mrs. Kate Kelley and appellee as her successor; and, third, that if the contract was not rescinded in 1899 or 1900, as claimed, and if appellant was not entitled in this suit to assert a right to a rescission, it nevertheless had title to the land by force of the five and ten years' statute of limitations. The trial was to the court without a jury. The appeal is from a judgment in appellee's favor.

T. D. Rowell, of Jefferson, and W. L. Grogan, of Shreveport, La., for appellant. Schluter & Singleton, of Jefferson, for appellee.

WILLSON, C. J. (after stating the facts as above). The correctness of the action of the trial court in sustaining appellee's exceptions to appellant's petition: (1) So far as it was for a foreclosure of the vendor's lien asserted against the land and to sell same, on the ground that a right to maintain a suit for such relief was barred by the four-year statute of limitations; and (2) so far as it was to rescind the contract of sale and recover the land, on the ground that an action for such relief was barred by force of the provision in the concluding clause of article 5695, Revised Statutes, as amended by Acts 1913 (Gen. Laws Sp. Sess. p. 39 [Vernon's Sayles' Ann. Civ. St. 1914, art. 5695]), was not challenged in that court, and is not challenged in any of the assignments in appellant's brief. The contention on this appeal is that the judgment should be reversed because it conclusively appeared from the testimony, it is insisted, that the title to the land revested in Mrs. Ford by a rescission in 1899 or 1900 of the contract by which she sold same to Mrs. Kate Kelley; or, if it did not so appear, that it did appear that the title revested in Mrs. Ford by operation of the statute of limitations of five and ten

years. As we understand the record, it does not support the contention. It not only did not appear as a matter of law from the testimony that the statute of limitations of five and ten years had operated to revest title in the Fords, but we think the contrary appeared to be true. The testimony was conflicting on the issue as to whether there was a rescission in 1899 or 1900 of the contract between Mrs. Ford and Mrs. Kate Kelley. The testimony of J. L. Ford was relied upon mainly to prove such a rescission. He testified as follows:

"After that note was due I talked with Mr. Kelley about it. He did not pay it. I did not make any trade with him about the note at that time. The first time I had a conversation with him the note was then due and in the meantime Kelley had failed. I finally reached an agreement with him about the property, and it was finally delivered over to me in this way: I let the note run along when it became due. I told him I did not care to crowd him. I said, 'If you are not able to pay it now, I will discount the note.' He finally said he could not pay it, and said, 'You can go ahead and sell it, and I will make a deed to it.' I let it run on that way until about 1900 or 1901. Along about the beginning of this century I just made the remark that I wanted to begin the century—I said, 'What are you going to do about that note?' He says, 'Just take the building; I don't want it and can't pay for it.' I took what possession I could. From that time up to the time I conveyed it to the Jefferson Wholesale Grocery Company I and my brother have exercised control and jurisdiction over it and owned the property according to my understanding, for my mother, and then for myself. The reason I did not take a deed from Kelley, instead of taking it under those conditions, along about that time there was quite a number of judgments, as I understood. Mike Kelley failed along about that time or in 1892 or 1893, and I just told him I would not crowd him. I said, 'I know you are hard up, and I will just carry you along;' and then when we finally talked about it he just agreed with me; said, 'If you can sell it I will make you a deed without any lawsuit.' He said he would make the deed to the person I sold it to."

It may very well be doubted whether the testimony quoted would have authorized a finding that the contract was rescinded as claimed. But, conceding it would, when considered in connection with other testimony in the record showing that the Fords, subsequently to the time it was claimed the rescission was effected, claimed to own the land and permitted the witness Ada Scott to use it as a place to store wood and to keep chickens in coops, it certainly did not demand such a finding. Instead, we think it more strongly supported the theory that there was no rescission of the contract, but a mere agreement that J. L. Ford might sell the land and apply the proceeds of the sale as a credit on the note. This theory was further strongly supported by testimony showing that the Fords ever after the time when it was claimed the rescission was effected until December, 1915, when they conveyed the land to appellant, ceased not to assert a right in themselves to a lien there-

on. That this is true appears from the quotation from the deed to appellant set out in the statement above showing that J. L. and W. H. Ford in December, 1915, were then asserting that they owned the note in question and a lien on the land to secure its payment. Such a claim on their part was consistent with the theory that the contract was never rescinded, but entirely inconsistent with the claim made at the trial and urged here that the contract covering the sale of the land was rescinded in 1899 or 1900.

The judgment is affirmed.